UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CR-127 |
| | ) | (VARLAN/GUYTON) |
| ANTHONY LAWRENCE and | ) | |
| DASINY McILWAINE, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This criminal case is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate H. Bruce Guyton on June 12, 2008 [Doc. 58]. Defendant Dasiny McIlwaine filed objections to the R&R [Doc. 65], which the Court will consider *de novo*.

Defendant McIlwaine is charged with, aided and abetted by co-defendant Anthony Lawrence, knowingly, intentionally, and without authority possessing with intent to distribute five (5) grams or more of a mixture and substance containing cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. [*See* Doc. 3.] Defendant McIlwaine is also charged with knowingly, intentionally, and without authority possessing with intent to distribute a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Defendant Lawrence entered a guilty plea in this case on July 31, 2008 and, accordingly has not filed any objections to the R&R.

The R&R addresses the two motions to suppress filed in the this case. Defendant McIlwaine filed a motion to suppress certain evidence obtained from her apartment and evidence of and relating to any of defendant McIlwaine's written and oral statements made while in custody of the Knoxville Police Department on February 27, 2006. [Doc. 20.] Defendant Lawrence also filed a motion to suppress evidence obtained from the apartment on February 27, 2006. [Doc. 22.] Following an evidentiary hearing on the motions to suppress on March 12 and 13, 2008, and the filing of a supplemental brief by the government,[1] Magistrate Judge Guyton entered a R&R recommending that the motions to suppress be denied. [*See* Doc. 58.]

## I. STANDARD OF REVIEW

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which defendant McIlwaine objects. In doing so, the Court has carefully considered Magistrate Judge Guyton's R&R [Doc. 58], the underlying briefs [Docs. 20; 21; 22; 26; 27; 53], defendant McIlwaine's brief regarding the pending objections [Doc. 65; *see also* Doc. 59], the government's response to defendant McIlwaine's objections [Doc. 60], the transcript of proceedings before Magistrate Judge Guyton [Doc. 47], and the exhibits admitted at the suppression hearing [*see* Doc. 46]. For the reasons set forth herein, the Court will overrule defendant McIlwaine's objections, and the motions to suppress will be denied.

---

[1] Defense counsel requested an opportunity to file a supplemental brief, which Magistrate Judge Guyton granted, but ultimately did not file a supplemental brief.

## II. ANALYSIS

### A. Objection 1: Credibility of Officers Ogle and Jinks

Defendant McIlwaine objects to Magistrate Judge Guyton's finding that Knoxville Police Department (KPD) Officers Ogle and Jinks were credible and that the witness, Lindsley Manning, was less credible, mistaken, or not in a position to observe in those instances where her testimony conflicts with the testimony of the officers. Defendant McIlwaine contends that there are discrepancies between the testimony of the officers at the suppression hearing and the words and actions captured on the video/audiotape of the search,[2] which was admitted as an exhibit to the hearing. The government responds encouraging the Court to adopt the R&R and arguing that defendant McIlwaine's objection should be treated as a failure to object because it is overly general.

In the R&R, Magistrate Judge Guyton stated:

> The Court finds the testimony of Ogle and Jinks credible in all respects. The Court further finds that Manning's testimony was largely credible, but where her testimony may be said to conflict with that of Ogle or Jinks, the Court finds that Manning was not credible, simply mistaken or that she was in a less advantageous position to perceive the events going on around her.

[Doc. 58 at 11.] The Court has reviewed the transcript from the suppression hearing and the video/audiotape admitted as Government Exhibit 1 to the hearing. The Court disagrees with

---

[2]The video/audiotape contains the video and audio recording of the in-car video and audio system in the police cruiser. The audio was recorded by a wireless microphone. Officer Ogle wore the wireless microphone on his body, and as such, it recorded his audio and the audio of anyone or anything in close proximity to him. The visual feed was recorded by a camera, which remained fixed inside the police cruiser and, thus the visual display only shows activities taking place in front of the police cruiser parked outside of defendant McIlwaine's apartment.

3

defendant's argument that there are discrepancies between the officers' testimony and the content of the tape which prevent the officers' testimony from being considered credible.[3] To the contrary, the testimony of the officers is largely consistent with the contents of the video/audiotape. Additionally, Ms. Manning's testimony does not affirmatively contradict that of the officers, but rather there are details that she did not know or remember. Accordingly, this objection is **OVERRULED**.

      **B.**      **Objection 2: Entry into Defendant McIlwaine's Apartment**

Defendant McIlwaine objects to Magistrate Judge Guyton's conclusion that the entry into defendant McIlwaine's apartment was lawful. Defendant McIlwaine argues that the discrepancies between the testimony of Officers Ogle and Jinks and the video/audiotape prevents the testimony of the officers from being credible and the record does not support the conclusion that defendant McIlwaine voluntarily invited the officers into the kitchen of her apartment. The government responds encouraging the Court to adopt the R&R and arguing that defendant McIlwaine's objection should be treated as a failure to object because it is overly general.

Officers may lawfully enter and search a home if voluntary consent is given by a person with the authority to do so, such as a resident. *See Illinois v. Rodriqguez*, 497 U.S. 177, 181 (1990). The Court agrees with Magistrate Judge Guyton's conclusion that the

---

[3]Defendant does not object to any specific factual statements or discrepancies in Objection 1. Therefore, the Court addresses the testimony and evidence as a whole. The Court will address objections to specific portions of the testimony and evidence as defendant raises them in Objections 2 though 7.

defendant McIlwaine consented to the officers' entry into her apartment. The Court's review of the transcript reveals that both officers testified that in response to the officers asking if they could come in, defendant McIlwaine stated, "Come on." *See* Suppression Hr'g Tr. 11; 27-28; 69; 89, Mar. 12-13, 2008. The conversation at the doorway between the officers and defendant McIlwaine is difficult to hear on the video/audiotape and, accordingly, the tape neither confirms nor contradicts the officers' statements. *See* Ex. 1; *see also* Hr'g Tr. 27-28; 89 (noting that the exchange was difficult to hear). Furthermore, Manning stated that she did not remember hearing defendant McIlwaine invite the officers into the house, though she confirms that defendant McIlwaine spoke to the officers at the door. *See* Hr'g Tr. 130. Accordingly, the Court finds that the KPD's officers' entry into defendant McIlwaine's apartment was legal and, therefore, this objection is **OVERRULED**.

### C. Objection 3: Crack Cocaine in Plain View

Defendant McIlwaine objects to Magistrate Judge Guyton's finding that the crack cocaine was in plain view on the kitchen table. Defendant McIlwaine argues that the discrepancies between the testimony of Officers Ogle and Jinks and the video/audiotape prevents the testimony of the officers from being credible and the record does not support the conclusion that the crack cocaine was in plain view. The government responds encouraging the Court to adopt the R&R and arguing that defendant McIlwaine's objection should be treated as a failure to object because it is overly general.

When officers are legally on a premises and come across evidence of a crime that is in plain view, the evidence may be lawfully seized without a warrant. *Horton v. California*,

5

496 U.S. 128, 135 (1990); *United States v. Carter*, 378 F.3d 584, 589-90 (6th Cir. 2004) (finding seizure of marijuana blunt legal based upon the plain view doctrine when officer saw blunt lying on a table inside defendant McIlwaine's hotel room after defendant McIlwaine consented to the officer's warrantless entry). An object can be in plain view, even if that view is partially obstructed. *See United States v. Buchanan*, 904 F.2d 349, 351-52 (6th Cir. 1990) (stating that hashish was in plain view within an open box partially covered by clothing). "The fact that the policeman may have to crane his neck, or bend over, or squat, does not render the plain view doctrine inapplicable, so long as what he saw would have been visible to any curious passerby." *United States v. Elkins*, 300 F.3d 638, 654 (6th Cir. 2002) (internal quotes and brackets omitted).

Officer Ogle testified that when he walked into the kitchen he noticed a female individual sitting at the table and three crack rocks and some digital scales on the table. *See* Hr'g Tr. 12; 44. Officer Ogle testified that the rocks were "in plain view right on the table." *See id.* at 45. Officer Jinks testified that "there was a set of digital gram scales and there were three white rocks that I immediately recognized as crack cocaine sitting on the table." *See id.* at 71; *see also id.* at 93. This testimony is corroborated by the video/audiotape in which a male voice asks, "What is that?" and, then replies to an inaudible response, "That's some rocks? Why you got some rocks up here for?" *See* Suppression Hr'g Gov't Ex. 1, Mar. 12-13, 2008. The male voice on the tape then states that it is in plain view. *See id.* At the suppression hearing, Officer Jinks identified the male voice as his own. *See* Hr'g Tr. 94.

6

Ms. Manning testified that she had been sitting at the kitchen table all day and had not seen anything that she would describe as a crack rock on the table until Officer Jinks picked it up. *See id.* at 137. She described Officer Jinks's seizure of the crack cocaine it in the following way:

> It was like, [he did] not really actually reach up under something, but it was like, like a – I'm not trying – I think it was a piece of paper or something, but it wasn't like, really covering it, but you – you just had a – it's hard to describe. It was like covered, but it wasn't covered. It was like, you know, like you have a piece of paper and you got a little space up under it, you can see like some crumbs or something sitting up under it. That's what it looked like when he picked it up.

*See id.* at 138.

The testimony of the officers is not inconsistent with the content of the video/audiotape or Ms. Manning's testimony. Though Ms. Manning's testimony is not entirely clear, she does state that Officer Jinks did not actually have to reach under anything to grab the crack cocaine and that whatever may have been partially obscuring her view of the crack rocks was in a position such that Officer Jinks could still see under it. Even if Officer Jinks had to contort his body to see under the obstruction, as long as he could view the crack cocaine out in the open, the plain view doctrine applies. *See Elkins*, 300 F.3d at 654. Thus, Ms. Manning's testimony actually corroborates rather than contradicts the officers' testimony that the crack cocaine was in plain view when they entered defendant McIlwaine's apartment. Accordingly, this objection is **OVERRULED**.

7

### D. Objection 4: *Miranda* Warnings

Defendant McIlwaine objects to Magistrate Judge Guyton's finding that the officers properly gave defendant McIlwaine and her co-defendant *Miranda* warnings. Defendant McIlwaine argues that the discrepancies between the testimony of Officers Ogle and Jinks and the video/audiotape prevents the testimony of the officers from being credible.[4] The government responds encouraging the Court to adopt the R&R and arguing that defendant McIlwaine's objection should be treated as a failure to object because it is overly general.

The Court finds that Officer Jinks asked Officer Ogle for a *Miranda* rights waiver card before Officer Ogle left the kitchen to do a protective sweep. Both officers testified about Officer Jinks's request for the card and the request can be heard on the video/audiotape. *See* Hr'g Tr. 15-16; 36; 73; 96; Hr'g Gov't Ex. 1. Both officers testified that Officer Ogle did not provide a *Miranda* card to Officer Jinks because Officer Jinks found one in his own pocket. *See* Hr'g Tr. 16; 36; 73; 96. Officer Jinks testified that he then read both defendants their rights and that they were both looking at him and they appeared engaged as he did so. *See id.* at 73-74. Officer Jinks stated that defendant McIlwaine waived her rights and that defendant Lawrence did not really have a response. *See id.* at 74.

---

[4] The Court notes that defendant McIlwaine moved to suppress any statements made at her apartment or while in the custody of Knoxville Police Department personnel. However, because defendant McIlwaine objects on the basis of alleged discrepancies between the testimony and the video/audiotape and the tape only recorded events at the apartment, the Court concludes that defendant McIlwaine's objection only contests the findings in the R&R regrading defendant McIlwaine's *Miranda* rights as they related to events that took place in defendant McIlwaine's apartment.

8

There are no discrepancies between Officer Jinks's testimony regarding *Miranda* and that of Officer Ogle and the contents of the video/audiotape as defendant McIlwaine suggests. Though Officer Jinks cannot be heard giving defendants their *Miranda* rights on the video/audiotape, there is a simple explanation for this. Officer Ogle testified that after Officer Jinks asked him for the *Miranda* rights waiver card, he went upstairs to do a protective sweep. *See id.* at 15. This is consistent with the sound on the video/audiotape resembling pounding footsteps up a stairwell. *See* Hr'g Gov't Ex. 1. Officer Ogle explained that he was wearing the only wireless microphone that recorded the sound heard on the video/audiotape. *See* Hr'g Tr. 7. He testified that the microphone records his own sounds and sounds that occur in close proximity to him. *See id.* Thus, after Officer Ogle left the area, the microphone would not be able to record Officer Jinks Mirandizing defendants in the kitchen.

Though defendant McIlwaine does not raise the issue of inconsistencies between Officer Jinks's testimony and that of Ms. Manning, the Court notes that Ms. Manning testified that she did not hear either of the officers read defendants their rights. *See id.* at 141-42; 146-47. In light of the corroboration between the testimony, the video/audiotape, and the surrounding circumstances, to the extent that Ms. Manning's testimony contradicts with Officer Jinks's testimony, the Court agrees with the R&R in that Ms. Manning was either in a less advantageous position to have knowledge about whether Officer Jinks read defendants their rights or she was mistaken. Officer Jinks's established actions of requesting a *Miranda* card and then stating that he had one are actions that would logically precede his

9

reading defendants their rights. Accordingly, the Court concludes that Officer Jinks properly Mirdandized defendants in the kitchen of defendant McIlwaine's apartment and this objection is **OVERRULED**.

### E. Objection 5: Protective Sweep

Defendant McIlwaine objects to Magistrate Judge Guyton's conclusion that the protective sweep was proper and lawful and that there was danger of harm to the officers. Defendant McIlwaine argues that the pervasive scope of the search exceeded the parameters of a protective sweep. Defendant McIlwaine also objects to the conclusion that there was no evidence to contradict the testimony of the KPD officers regarding the nature of the search. Defendant McIlwaine argues that the evidence on the video/audiotape contradicts the testimony of the KPD officers. The government responds encouraging the Court to adopt the R&R and arguing that defendant McIlwaine's objection should be treated as a failure to object because it is overly general.

A protective sweep is a "quick and limited search of the premises, incident to an arrest and conducted to protect the safety of the police officers and others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). The Sixth Circuit noted,

> The *Buie* Court articulated two holdings: First, during a search incident to an arrest occurring inside a home, officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Second, officers may conduct a search more pervasive in scope when they have "articulable facts which taken together with the rational inferences from those facts would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

10

*United States v. Stover*, 474 F.3d 904, 911 (6th Cir. 2007) (quoting *United States v. Colbert*, 76 F.3d 773, 776 (6th Cir. 1996)).

It was proper for the officers to conclude that there was a danger of harm to themselves and others, and therefore to conduct a protective sweep when there were drugs present and the officers had discovered that defendant McIlwaine lied to them about there being others in the apartment. Officer Ogle asked defendant McIlwaine and Ms. Manning if anyone was in the house besides them and their babies. Though no audible response from either women can be heard on the video/audiotape, Officer Ogle testified that defendant McIlwaine stated that there was no one else in the apartment. *See* Hr'g Tr. 13; 71. After the women denied that there were other people in the apartment, defendant Lawrence came down the stairs. *See id.* at 13; 72. At this point, the officers had already observed crack rocks and digital scales on the kitchen table indicating drug trafficking. *See id.* at 12; 14.

Because the officers knew that defendant McIlwaine lied about the presence of at least Lawrence in the apartment, the officers were warranted in believing that there may be other undisclosed individuals in the apartment. The combination of evidence indicating drug trafficking and the potential presence of additional hidden persons in the apartment warranted a protective sweep of other places where an individual could be hiding.

During his initial sweep, Officer Ogle discovered a man named Desmond Cowan in one of the upstairs bedrooms. *See id.* at 16. Officer Ogle found a loaded .357 Glock and a large bag of marijuana on the bed about two feet away from Mr. Cowan. *See id.* at 17. This discovery of yet another individual in the apartment, this one with a loaded weapon, further

justifies Officer Ogle's continuation of the protective sweep and warrants him doing so in a more pervasive manner. Accordingly, this objection is **OVERRULED**.

### F. Objection 6: Consent to Search

Defendant McIlwaine objects to Magistrate Judge Guyton's finding that the KPD officers received any sort of consent to search and that such search was proper, lawful, or within the scope of the consent. Defendant McIlwaine also objects to the conclusion that there was no evidence to contradict the testimony of the officers regarding the consent to search on the basis that the contents of the video/audiotape contradict the testimony. Defendant McIlwaine argues that the evidence on the video/audiotape contradicts the testimony of the officers.

Officer Jinks testified that he asked both defendants for permission to search the apartment for drugs and guns in a conversational tone and that defendant McIlwaine gave her consent. *See* Hr'g Tr. 74-76. The Court finds, based upon the factual timeline established by the record, that Officer Ogle and the wireless microphone were upstairs at the time consent was given. Thus, the fact that this conversation between Officer Jinks and defendant McIlwaine cannot be heard on the video/audiotape does not contradict Officer Jinks's testimony on the subject. Additionally, Officer Ogle testified that Officer Jinks indicated they now had consent to search when Officer Ogle handed off Mr. Cowan to Officer Jinks. *See id.* at 34-35; 62. Officer Ogle further testified that he was halfway up the stairs and about ten feet away from Officer Jinks when Officer Jinks told him they had consent. *See id.* at 62.

12

Due to the distance between the officers, the absence of this information on the video/audiotape does not contradict the testimony.

Defendant McIlwaine later reaffirmed her prior consent to a search of her apartment. *See id.* at 78. Officer Jinks testified that after he told defendant McIlwaine that he appreciated her consenting to the search, defendant McIlwaine responded, "Yes, I told you could look anywhere, I told you could search anywhere," and Officer Jinks replied, "Yeah, and you didn't tell us to stop, and I appreciate that." *See id.* at 79. A portion of this conversation can be heard on the video/audiotape. *See* Hr'g Gov't Ex. 1.

Though defendant McIlwaine does not raise the issue of discrepancies between the officers' testimony and the evidence on the video/audiotape and Ms. Manning's testimony, the Court notes that Ms. Manning testified that she did not hear defendants give the officers consent to search the apartment. *See id.* at 142-43. In light of the corroboration between the testimony, the video/audiotape, and the surrounding circumstances, to the extent that Ms. Manning's testimony contradicts Officer Jinks's testimony and the content of the tape, the Court agrees with the R&R in that Ms. Manning was either in a less advantageous position that Officer Jinks to have heard a conversation between defendants and Officer Jinks or she was mistaken.

The Court finds that defendant McIlwaine gave the officers consent to search her apartment for drugs and guns. The Court also concludes that the video/audiotape does not contradict the testimony of the officers, but rather, supports it by its recording of defendant McIlwaine reaffirming her consent. Accordingly, this objection is **OVERRULED**.

13

### G. Objection 7: Statements

Defendant McIlwaine objects to Magistrate Judge Guyton's finding that the statements of defendant McIlwaine and her co-defendant either at the apartment or at the police station were voluntary and lawfully taken. Defendant McIlwaine argues that the discrepancies between the testimony of the KPD officers and the video/audiotape prevents the testimony of the officers from being credible. The government responds encouraging the Court to adopt the R&R and arguing that defendant McIlwaine's objection should be treated as a failure to object because it is overly general.

The Court has already concluded that defendant McIlwaine was properly read her *Miranda* rights and thereafter waived them. *See* Part II.D. The video/audiotape does not contradict this finding, nor does it reveal any evidence of coercion. There is also no evidence that defendant McIlwaine was subject custodial interrogation before waiving her *Miranda* rights. The Court concludes that any statement given by defendant McIlwaine was voluntary and therefore, this objection is **OVERRULED**.

### III. CONCLUSION

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 58] of Magistrate Judge Guyton, and the motions to suppress [Docs. 20; 22] are hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

14